**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Luis Junior Parra Benitez,

Petitioner,

v.

Todd M. Lyons, *et al.*,

Respondents.

No. CV-26-02294-PHX-JJT (MTM)

**ORDER**

On June 9, Petitioner filed a Motion to Enforce Judgment, seeking 1) return of his property taken upon arrest but not returned upon release, to include his work permit and driver's license; 2) correction of his Order of Supervision from a Form I-220B that incorrectly identified Petition as subject to an order of removal to a form I-220A that did not contain that errant classification; and 3) correction of Petitioner's reporting location to ICE offices in Minnesota where he lived before his arrest and detention, rather than in Fort Myers, Florida. (Doc. 16.) Petitioner requested these specific actions to give effect to the Court's previous Order granting habeas relief and requiring Respondents to release Petitioner "under the same conditions that existed before his re-detention." (Doc. 13 at 6). Respondents did not respond to the Motion and on August 24, 2026, the Court issued an Order deeming their non-response as consent to granting of the motion pursuant to LRCiv 7.2(i), but also noting that

> [e]ven on a review of the merits, the Court would grant the Motion, in the absence of controverting evidence. Each of the

> three actions Petitioner attributes to Respondents materially alters the conditions of release Petitioner lived under before his re-detention. The absence of his work permit and driver's license, if still valid, restricts movement and lawful economic activity and subjects him to further detention by law enforcement as well as hinders his ability to meet other conditions required to remain in compliance with his terms of his release. The issuance of an I-220B rather than an I-220A substantially increases the risk that Petitioner will be detained by other arms of DHS. And the requirement to report to an ICE office 1700 miles from where Petitioner lives, and lived before his detention, is a Kafka-esque requirement imposing extreme and unnecessary hardship on Petitioner on pain of violating his terms of release. The Court finds—Respondents having failed to provide information indicating otherwise—that Respondents have not complied with its previous Order requiring release "under the same conditions that existed before his redetention."

(Doc. 17.) The Court thus granted Petitioner's Motion for relief. But because the Court recognized Respondents might have rectified some or all of these deficiencies in the interim, it ordered the parties to consult as to the status of all three asserted changes to Petitioner's conditions to release. The Order required Respondents to "promptly" rectify only those changed conditions it had not yet addressed, and to file a Notice of Compliance by August 31, 2026. (Doc. 17 at 2-3.)

On August 31, 2026, Respondents filed a document captioned "Status Update: Petitioner Release Conditions and Personal Property" (Doc. 18). The Status Update indicated that Respondents had fully rectified the changed conditions of Petitioner's release as ordered by the Court regarding issue 2),[1] stating that "Petitioner was switched to the correct form of release, I-220A. This has been resolved." It further stated that issue 3) was fully resolved in that "Petitioner's check-in location has been switched to Minnesota. Respondents confirmed that Petitioner did previously have check-in requirements. This has been resolved." (Doc. 18 at 1.) As for issue 1), Respondents stated

[1] In their respective filings Petitioner and Respondents address the same three issues, but number them differently. (Docs. 16, 18.) The Court will refer to the issues as originally raised in Petitioner's Motion to Enforce at Doc. 16.

that "[t]he only outstanding issue is Petitioner's work permit." (Doc. 18.at 1.) From this, the Court infers that Respondents returned Petitioner's other property seized upon his arrest and still in Respondent's possession after his release, to include Petitioner's driver's license. As for the work permit, Respondents stated that

> [t]here is no evidence at this time that DHS ever had Petitioner's work permit in its possession. Respondents would have complied and had no objection to returning any personal property in our possession, but after looking in Arizona, Florida, and Minnesota there is no evidence that Respondents have or had Petitioner's work permit. As a result, Respondents oppose any request to obtain a new work permit for Petitioner. Petitioner can request a new copy through normal administrative channels.

(Doc. 18 at 1-2.) The Court takes Respondents at their word that they searched their offices in the states they held Petitioner—Arizona, Florida and Minnesota—and found no work permit. But that does not end the matter.

The Court ordered that "if Petitioner's property—to include his [] work permit—ha[s] not been returned to him, Respondents shall do so *or shall facilitate the replacement* of those items at no cost to Petitioner." (Doc. 17 at 2-3)(emphasis added.) The Court so ordered because in granting the habeas relief requested, it had concluded Respondents had detained Petitioner in violation of the Constitution's Due Process clause and the INA. (Doc. 13 at 3-5.) If Petitioner lost his work permit in the course of his unlawful detention, the Court has ordered Respondents to facilitate its replacement—the replacement of a document issued by a component of the department within the control of a Respondent. And the Court finds that to be the case under the circumstances before it.

Petitioner asks the Court "to return his work permit [] to him" and spends nearly two pages of his Motion briefing caselaw authorizing the return of work permits to successful immigration habeas petitioners; his counsel also supplies a digital image of what appears to be an employment authorization card issued by issued by USCIS to Luis J. Parra Benitez with an issue date of February 15, 2024 and an expiration date of

February 14, 2029. (Doc. 16-2.) Unless DHS records indicate no such authorization was issued—a circumstance that if true the Court trusts Respondents would have noted in their Notice—this work permit existed. And if Petitioner still had his work permit, the Court sees no reason he would not be seeking its return from Respondents.

The Court thus concludes by preponderance that Petitioner lost his employment authorization in the course of his arrest and detention by ICE, whether ICE can find the document in its repositories or not. This is why the Court added the language in its Order requiring that if Respondents couldn't return Petitioner's work permit—for example, if they couldn't locate it—they must facilitate its replacement. (Doc. 17 at 3.) Respondents' "oppos[ition to] any request to obtain a new work permit for Petitioner" is also untimely. Respondents waived their opportunity to oppose Petitioner's request when they failed to respond to his Motion to Enforce. In any event, the purpose of the Court's Order granting habeas relief at Doc. 13 was to put Petitioner back in the position he was in before ICE detained him. That also was the purpose of the Court's Order requiring return of his property at Doc. 17. Replacing the work permit the Court finds was at least lost in the apprehension and detention of Petitioner, which detention the habeas writ reversed, is also for that purpose.

**IT IS ORDERED** granting the Motion to Enforce Judgment (Doc. 16). Within seven calendar days of issuance of this Order, Respondents shall either provide records to the Court demonstrating that USCIS had not issued the employment authorization document depicted in Doc. 16-2 at the time of Petitioner's apprehension in the instant matter, or they shall provide Petitioner with a replacement copy of his current employment authorization as referenced in Doc. 16-2.

Dated this 1st day of September, 2026.

Honorable John J. Tuchi
United States District Judge